## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | | |
|---|---|---|
| SHAWN ABEL, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-166-BLG-SPW |
| v. | ) ) | |
| AUSTYN SPENCER ENTERPRISES, LLC, BLUE SKY PIZZA, LLC and RHETT HIGHTOWER, | ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFF'S CONSENT MOTION FOR FINAL CERTIFICATION OF THE STATE LAW CLAIMS TO PROCEED AS CLASS ACTIONS FOR SETTLEMENT PURPOSES, APPROVAL OF A CLASS ACTION SETTLEMENT AND APPROVAL OF A COLLECTIVE ACTION SETTLEMENT

Plaintiff, Shawn Abel, on behalf of himself and all others similarly situated, through his attorneys, with the consent of Defendants Austyn Spencer Enterprises, LLC, Blue Sky Pizza, LLC and Rhett Hightower, through their attorneys, moves the Court for final certification of the state law claims to proceed as class actions for settlement purposes and for final approval of the parties' class and collective action settlement.

A copy of the parties' executed Settlement Agreement is attached as "Exhibit 1." The declarations of Plaintiff's attorneys Mark Potashnick and Eli Karsh in support of this motion and brief are attached as "Exhibit 2" and "Exhibit 3," respectively. Plaintiff incorporates the following Memorandum in Support. The settlement meets the standards for approval of an FLSA settlement and for granting preliminary approval of a class action settlement.

### Facts and Procedural History

Defendants operate a chain of eight Domino's pizza stores in Montana and Idaho.

Plaintiff worked for Defendants as a delivery driver from about 2016 to July 2018.

On November 21, 2018, Plaintiff filed suit against Defendants on behalf of himself and similarly situated delivery drivers currently and formerly employed by Defendants. Plaintiff alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing their net wages below the federal and state minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages) in violation of the Fair Labor Standards Act ("FLSA") and Montana Minimum Wage and Overtime Compensation Act ("MMWOCA"), Mont. Code Ann. § 39-3-401 *et seq.*. Further, Plaintiff alleged that Defendants applied the same reimbursement formula and rate to all of their delivery drivers during the recovery period.

Soon thereafter, Defendants' counsel contacted Plaintiff's attorney to suggest disclosure of data needed to evaluate liability and damages, followed by mediation. Defendants produced that data, which Plaintiff's counsel thoroughly reviewed and analyzed thorough detailed spreadsheet calculations. The parties mediated for a full day on August 8, 2019 in Orlando, Florida with a highly experienced wage and hour and class action mediator, Kay Wolf, Esq. After a full day of mediation, entailing several successive demands and offers, the parties reached an accord resulting in the settlement agreement filed herewith. Named Plaintiff Abel actively participated in each round of the mediation. The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests. Potashnick Decl., ¶¶ 1-7; Karsh Decl., ¶ 1-7.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Potashnick Decl. ¶ 5 Karsh Decl., ¶ 5.

After preliminary approval and dissemination of Court-approved notice to the class, 34.25% of the class have timely filed claims and no class member has opted-out or objected to the settlement, which indicates that the class is generally pleased with the result.

### Key Settlement Terms

The parties have executed a Settlement Agreement and Release of Claims (Exhibit 1). In sum, they agreed to settle all putative class members' wage and hour claims by Defendants paying $250,000.00 inclusive of attorneys' fees, costs and a service award. All class members will receive at least $50.00. The remaining settlement funds will be distributed to class members who submit claims based on the following equitable formula:

> Total deliveries during the recovery period by each class member filing a claim / all Class Members' deliveries during the recovery period x net settlement fund remaining after distribution of Fifty Dollars ($50.00) to each Class Member and Court-approved, attorney's fees, litigation costs, administration costs and incentive award.

*See* Settlement Agreement, ¶ 3.4(C).

The release binding all Class Members who did not opt out is limited to "all state law claims asserted in Plaintiff's Complaint and all state law claims which could reasonably be based on the allegations of Plaintiff's Complaint." Additionally, Class Members who submitted a claim form additionally released claims under the FLSA. *See* Settlement Agreement, ¶ 4.1(B).

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, named Plaintiff Abel seeks a modest service award of $3,500.00. *See id.,* ¶ 3.3(A).

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to one-third of the maximum settlement amount. Defendants do not oppose or object to this request for attorneys' fees and costs. *See id.*, ¶ 3.2(A).

The parties jointly selected a settlement administrator, CAC Services Group, LLC, whose fees will be paid from the maximum settlement amount. *See id.,* ¶ 2.2; 3.4(C).

The notice of settlement and claim form previously approved by the Court were mailed to all putative class members. After dissemination of those documents, 34.25% of the class have timely filed claims and no class member has opted-out or objected to the settlement.

**Argument**

**I.  Class Action Certification[1]**

Where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.,* 327 F.3d 938. 952 (9th Cir. 2003).

To obtain class certification, the proponent of class certification must show the elements required under Fed. R. Civ. P. 23.  Subsection (a) of Rule 23(a) requires:

> "(1) the members of the class are so numerous that separate joinder of each member is impracticable ["*numerosity*'];
>
> (2) there are questions of law or fact common to the class ["*commonality*"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["*typicality*"]; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ["*adequacy of representation*"].

In addition to Rule 23(a), the party seeking class certification must satisfy one of the alternative requirements of Rule 23(b).  In this case, the pertinent requirement is found in subsection (b)(3), which provides that "...the questions of law or fact common to class members predominate over

---

[1] Defendants do not object to class certification for settlement purposes only and would otherwise maintain their defenses regarding class certification and the merits had settlement not been reached.

any questions affecting only individual members ["*predominance*"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["*superiority*"]." *Id.*

### Rule 23(a)(1): Numerosity

Plaintiff alleges his claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class consists of approximately 473 current and former employees. Thus, the settlement class is so numerous that separate joinder of each member is impracticable. *See, e.g., Wakefield v. Visalus, Inc.,* 2019 U.S. Dist. LEXIS 141974, *28-29 (D. Or. Aug. 21, 2019) (recognizing a "rough rule of thumb" that "about 40 class members" are required "in order to satisfy the numerosity requirement") (citing *Or. Laborers-Emp'rs. Health & Welfare Tr. Fund v. Philip Morris,* 188 F.R.D. 365, 372 (D. Or. 1998)).

### Rule 23(a)(2): Commonality

The "commonality" inquiry of Rule 23(a)(2) requires at least one question of law or fact common to each class member. *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011)) ("even a single common question will do."); *Burton v. Mt. W. Farm Bureau Mut. Ins. Co.,* 214 F.R.D. 598, 608 (D. Mont. Mar. 31, 2003) (same). Commonality is satisfied where questions of law refer to standardized conduct by the defendants. *Dillon v. Clackamas Cty.,* 2018 U.S. Dist. LEXIS 124561, *46 (D. Or. May 2, 2018) (citing cases); *Harper v. Law Office of Harris & Zide LLP,* 2016 U.S. Dist. LEXIS 59417, *10 (N.D. Cal. May 4, 2016). Establishing commonality does not require complete identity of the plaintiffs' claims. *See, e.g., Takiguchi v. MRI Int'l., Inc.,* 2016 U.S. Dist. LEXIS 36129, *12 (D. Nev. Mar. 21, 2016). Moreover, "[t]he commonality requirement is a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.,* 2010 U.S. Dist. LEXIS 140632, *37 (N.D. Cal. Dec. 21, 2010).

Plaintiff alleges his claims easily satisfy the "commonality" requirement because all class members are alleged to have held the same job, performed the same primary job duty of delivering pizzas and other food to Defendants' customers using their personal vehicles, were compensated by similar hourly pay rates, drove similar delivery distances, Defendants are alleged to have reimbursed all of them with a comparable flat rate per delivery, and their claims are based on the same legal theory. Plaintiff contends a common legal theory applies to all claims, specifically whether Defendants either (1) reimburse actual vehicle costs or (2) reimburse at the IRS standard business mileage reimbursement rate ("IRS rate"). *Hatmaker v. PJ Ohio,* 2019 U.S. Dist. LEXIS 191790, *5-22 (S.D. Ohio Nov. 5, 2019); *Brandenburg v. Cousin Vinny's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 189878, *11 (S.D. Ohio Nov. 6, 2018); *Zellagui v. MCD Pizza, Inc.,* 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 13, 2014); *see also, e.g., Lin v. New Fresca Tortillas, Inc*., 2019 U.S. Dist. LEXIS 74505, *11-12 (E.D.N.Y. May 1, 2019) (recognizing that standard reimbursement rates apply, but utilizing motorcycle reimbursement rate rather than IRS rate because workers ride motorcycles to perform job).

Defendants likely contend that a different legal theory holds that employees may recover vehicle costs when the employer's estimation of such costs is unreasonable, and the shortfall results in minimum wage deficits. *See, e.g., Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, *20-24 (E.D. Mo. Dec. 31, 2013) ("*Perrin I*") (explaining development of applicable law and citing cases). Plaintiffs believe that even if that legal theory applies, it is still a common legal theory based on common facts. Therefore, it is Plaintiff's position that the "commonality" prong has been met.

### Rule 23(a)(3): Typicality

Plaintiff alleges his claims satisfy the "typicality" requirement of Rule 23(a)(3) as Plaintiff alleges that he was victimized in the same manner as the other class members by the aforementioned uniform policy of Defendants, and all class members' claims depend on the exact same legal theory. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."). Thus, to find typicality, a "'court does not need to find that the claims of the purported class representatives are identical to the claims of the other class members.'" *Sonner v. Schwabe N. Am., Inc.,* 2019 U.S. Dist. LEXIS 117623, *12 (C.D. Cal. Jul. 2, 2019) (quoting *Haley v. Medtronic, Inc.,* 169 F.R.D. 643. 649 (C.D. Cal. 1996)). "'In other words, a claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims.' *Id.*, 2019 U.S. Dist. LEXIS 117623, at *12-13. For purposes of approval of a settlement class, Plaintiff has satisfied that test.

### Rule 23(a)(4): Adequacy of Representation

Plaintiff's alleged claims satisfy the "adequacy" requirement of Rule 23(a)(4) because his attorneys are veteran class action counsel, particularly in claims alleging under-reimbursement of automobile expenses in the pizza delivery industry, and because Plaintiff's interests are not antagonistic to the class members. Indeed, plaintiff sought to champion the class members' rights by seeking out counsel, providing counsel with information about the claims, filing class and collective claims and actively participating in mediation of the claims. *See, e.g., Trinh v. Homan,* 2018 U.S. Dist. LEXIS 219611, *21 (C.D. Cal. Oct. 18, 2018) ("Adequacy of representation requires that the named Petitioners (1) have no interests antagonistic to the interests of the class

and (2) are represented by counsel that is capable of vigorously prosecuting their interests.") (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 308 F.R.D. 606, 618 (N.D. Cal. 2015)).

### Rule 23(b)(3):  Predominance and Superiority

In addition, Plaintiff contends that his claims satisfy Rule 23(b)(3), in that questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class.  Plaintiff contends the predominant question for *every* class member is either (1) did the employer track and reimburse actual vehicle costs or reimburse at the IRS rate or (2) did the employer provide a reasonably approximate vehicle reimbursement.

Finally, Plaintiff contends that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt-out of the parties' settlement.  Counsel for the parties are unaware of any other pending litigation against Defendants entailing the same claim.  For purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records, a class action settlement will foster judicial economy by avoiding duplicative litigation, and a class settlement will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented.  These same considerations have warranted class certification in the similar claims by pizza delivery drivers.  *See, e.g., Perrin I,* 2013 U.S. Dist. LEXIS 181749, at *25-26; *Bass v. PJCOMN, Inc.,* 2011 U.S. Dist. LEXIS 58352, *10-11 (D. Colo. Jun. 1, 2011).

## II.    The Montana and Idaho Class Action Settlement Should Be Approved

"Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is

given to class members, whether final approval is warranted." *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* 2019 U.S. Dist. LEXIS 127093, *3-4 (D. Or. Jul. 29, 2019) (quoting *Carlin v. DairyAmerica, Inc.,* 380 F.Supp.3d 998, 1005 (E.D. Cal. 2019) (quoting *Nat'l. Rural Telecomm's. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004)).   The Court previously preliminary approved the settlement and Court-approved notice was disseminated. Thus, this litigation has reached the final approval stage.   Before a district court finally approves any settlement, compromise, or voluntary dismissal of any claim, issue, or defense in a certified class action, it must determine whether the proposed resolution is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2); *Hanlon*, 150 F.3d at 1026.

The Ninth Circuit has identified factors that a district court should evaluate in determining whether to approve a settlement or compromise of a certified class action:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.   Here, all those factors favor preliminary approval, except only one factor which is inapplicable.

Notably, in evaluating the parties' proposed compromise, the Court need not reach its own conclusions as to the expected value of litigating the claims through trial and appeal:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. … Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement

is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Grewe v. Cobalt Mortg., Inc.*, 2016 U.S. Dist. LEXIS 98224, *8-9 (W.D. Wa. Jul. 27, 2016) (citing *Officers for Justice* and *Rodriguez v. West Publg.*, 563 F.3d 948, 965 (9th Cir. 2009) and recognizing that "the Ninth Circuit rejects the argument that a court must specifically weigh the merits of the class's claim against the settlement amount and quantify the expected value of fully litigating the matter.") (internal citations and alterations omitted).

**Factor 1:  Strength of the Plaintiff's Case**

Plaintiff believes his claim is supported by substantial evidence, but ultimately that claim depends upon persuading a jury to adopt his evidence over Defendants' competing evidence and arguments.  The claims may depend on competing expert vehicle costing testimony.  *Perrin II*, 2014 U.S. Dist. LEXIS 133974, at *12; *Villalpando*, 2016 Dist. LEXIS 53773, at *45.  Courts recognize that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."  *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in favor of approval.").  Indeed, "it is virtually impossible to predict with certainty which testimony would be credited….".  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Predicting how a jury would weigh the evidence here is particularly difficult because no known benchmarks exist for how a jury might decide or value the claims.  Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all.  Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation.  In sum, the uncertainty of a jury trial warrants settlement approval.

**Factor 2:  Risk, Expense, Complexity and Likely Duration of Further Litigation**

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. Nat'l. Football League,* 787 F.3d 502, 512 (8th Cir. 2015).  This case is no exception. Notably, Plaintiff's counsel has litigated similar claims for longer than six years prior to settlement. Potashnick Decl., ¶ 14.  As explained above, this litigation involved complex and novel issues. This litigation may be expensive, both to the parties in terms of expert costs and time and to the Court in terms of deciding difficult and complex issues.  By reaching a favorable settlement now, the parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed.  In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

**Factor 3:  Risk of Maintaining Class Action Status Through the Trial**

Plaintiff recognizes some risk of denial of class certification Compare *Brandenburg,* 2018 U.S. Dist. LEXIS 189878, at *2-18 (certifying same class claim under Rule 23); *McFarlin v. The Word Enterprises, Inc.,* 2017 U.S. Dist. LEXIS 164968, *3-13 (E.D. Mich. Oct. 5, 2017) (same); *Perrin I,* 2013 U.S. Dist. LEXIS 181749, at *4-8 & 16-26 (same);  *with Sullivan v. PJ United, Inc.,* 2018 U.S. Dist. LEXIS 143236 (N.D. Ala. Jun. 22, 2018).  The parties have significant disagreements as to the merits of Plaintiff's claims.  For example, Defendants contend that Plaintiffs would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine the Class Members' damages. Nevertheless, Plaintiff's counsel weighed that risk in negotiating the settlement amount.

**Factor 4:   Amount Offered in Settlement**

The settlement provides meaningful monetary relief to the Plaintiff and the other delivery drivers and eliminates the inherent risks each side would bear if this complex litigation continued to resolution by a jury—an issue that, to the parties' knowledge, no jury has previously decided. The average recovery made available to delivery drivers was approximately $330.19 ($250,000.00 gross recovery - $83,333.00 fees and costs - $3,500.00 service award - $6,987.20 administration costs = $156,179.80 / about 473 delivery drivers = $330.19), with each delivery driver allocated at least $50.00. The certainty of that consideration provides far more value to low-wage-earning workers than the mere possibility of some amount of recovery at an unknown future date.

**Factor 5:  Extent of Discovery Completed and the Stage of the Proceedings**

Although this claim settled early, counsel for the parties have litigated several similar claims by pizza delivery drivers around the nation.  Thus, they were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate damages.  They were also able to laser-focus their settlement efforts.  Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieve settlement without additional involvement by this Court.  Such achievement warrants settlement approval.

**Factor 6:  Experience and View of Counsel**

Class Counsel has recommended this settlement without hesitation as in the best interests of the class members.  That recommendation is based on Class Counsel's substantial experience in class litigation and litigation of numerous similar claims.  Therefore, this factor weighs strongly in favor of approval.  *See Gribble v. Cool Transports Inc.,* 2008 U.S. Dist. LEXIS 115560, *26 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

**Factor 7:  Presence of a Governmental Participant**

This factor is non-applicable.

**Factor 8:  Reaction of the Class Members to the Proposed Settlement**

No class member has opted-out or objected to any term of the settlement, which indicates that the class is generally pleased with the result.  *See, e.g., Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement).

## III.    The FLSA Settlement Should be Approved

The settlement provides relief for individuals who have affirmatively opted-in to this matter pursuant to the FLSA's collective action procedures and for those who have chosen not to opt-out of the settlement pursuant to Rule 23.  For many of the reasons stated above regarding settlements under Rule 23, the settlement is a fair and adequate resolution under the FLSA and ought to be approved.

In a lawsuit brought by an employee against his or her employer under § 216(b), the employee may settle and release FLSA claims if the parties present to the court a proposed settlement and the court approves the settlement. *Fenn v. Hewlett-Packard Co.*, No. 1:11-cv-00244-BLW, 2012 WL 6680358, *1 (D. Idaho Dec. 21, 2012).  The settlement should be approved when it is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

As explained above, the Parties are represented by experienced and competent counsel and the Parties engaged in extensive negotiations.  In addition, counsel for the Parties have discussed at considerable length Plaintiffs' assertions and Defendants' defenses, and their respective legal theories in support of their positions.  This settlement of these claims results from a compromise

between the Parties on a variety of *bona fide* disputes regarding issues of law and fact, including the applicable reimbursement rate.

The Settlement occurred only after informal discovery, including production of reimbursement records to facilitate both Parties' ability to make detailed legal and factual analyses of the claims and defenses, arm's-length negotiation between Plaintiffs' counsel and Defendants' counsel, and a full-day mediation with a mediator experienced in resolving wage and hour disputes under the FLSA. The Parties stipulate that they are resolving the matter to avoid unnecessary further costs, time, and risks associated with continuing this litigation. The Parties also considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a settlement would be in the public's interest.

The Settlement negotiated in this case reflects a reasonable compromise of the disputed issues and other relevant considerations. All Parties, through their attorneys, voluntarily agreed to the terms of the Settlement during negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation, negotiation, and settlement process. The Settlement amounts apportioned to the different opt-ins will take into account and be apportioned based on the specific number of miles driven and rate of reimbursement of each opt-in. Counsel for all Parties agree that, in their respective opinions, the settlement is fair and reasonable under the circumstances. Because the Settlement agreed to by the Parties is a fair and equitable compromise of a *bona fide* dispute, the Parties request that the Court approve the Settlement and enter a final judgment dismissing the case, in its entirety, with prejudice.

## IV.    Attorney's Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiff's counsel will recover their fees from the gross settlement amount. Ex. 1, ¶ 3.2(A). The Montana law, Idaho law, and the FLSA all contain

fee and cost shifting provisions. 29 U.S.C. § 216(b); Mont. Code Ann. §§ 39-3-407 & & 39-3-214; Idaho Code § 45-615(2). As various courts have observed, the theory behind attorneys' fee awards in representative actions is that "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Natl. Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (cited with approval in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In other words, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Yue Zhou v. Wang's Restaurant*, 2007 U.S. Dist. LEXIS 60683, *4-5 (N.D. Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory."). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees *and costs* equal to one-third (1/3) of the total settlement amount. Other courts in this Circuit have approved the same percentage in cases entailing the exact same claims. *See, e.g.*, *Kirkwood v. Noble Food Grp., Inc.,* 2019 U.S.

Dist. LEXIS 10146, *1-4 (W.D. Wa. Jan. 22, 2019); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, *12-15 (D. Ariz. Jun. 9, 2017); *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (Ex. 4).

The Ninth Circuit has recognized a loose benchmark of 25% in Rule 23 class actions involving passive plaintiffs, but courts have recognized that most percentage fee awards exceed the benchmark. *See, e.g.*, *Syed v. M-1, LLC*, 2017 U.S. Dist. LEXIS 118064, *15-18 (E.D. Cal. July 27, 2017) (awarding fees of 1/3 of FLSA and Rule 23 settlement fund); *Bell v. Consumer Cellular, Inc.,* 2017 U.S. Dist. LEXIS 95401, *33 (D. Or. Jun. 21, 2017) (recognizing that "Courts have commonly approved awards of approximately 33% in [wage and hour] cases." (citing cases)); *Hopkins v. Stryker Sales Corp.,* 2013 U.S. Dist. LEXIS 16939, *8-10 (N.D. Cal. Feb. 6, 2013) (awarding 1/3 fee and citing 6 cases awarding at least 1/3 fee); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 492 (E.D. Cal. 2010) (33.3% fee awarded); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 111497, *17-18 (N.D. Cal. Feb. 2, 2009) (30% fee awarded). Indeed, in "most common fund cases, the award exceeds that benchmark." *Vasquez*, 266 F.R.D. at 491 (internal quotation marks omitted).

Here, the Named Plaintiff agreed to pay 35% of any collective action settlement as a fee, given the relatively small size of the case.  However, Plaintiff's Counsel voluntarily agreed to reduce that fee to one-third (1/3) as part of the settlement, again *including litigation costs*.

To ensure a fee award is reasonable, this Circuit applies "the *Kerr* factors," to cross-check the ultimate reasonableness of an attorneys' fee award: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the

customary fee; (6) whether the fee is fixed or contingent;[2] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *In re Bluetooth*, 654 F.3d at 942 n.7 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975)).  All "*Kerr* factors" support preliminary approval of the requested fee.

> ### *Kerr* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before Plaintiff's counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by Plaintiff's counsel provided significant and novel challenges, and ultimately yielded favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward claim under the FLSA for unpaid amounts")).

Under the defendants' threats of seeking sanctions in both the *NPC case* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if their theory proved incorrect, Plaintiff's Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for conditional certification of the FLSA claims here, and ultimately this settlement.

---

[2] This factor is no longer applied.  *In re Bluetooth,* 654 F.3d at 942 n.7.

The U.S. District Court for the District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.

> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368 (D. Md. Dec. 19, 2016); *see also, e.g.,* *Jimenez v. Pizzerias*, LLC, 2017 U.S. Dist. LEXIS 129820, *13-14 (S.D. Fla. Aug. 14) ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

The fact that rulings from other courts – obtained by Plaintiff's Counsel - may have helped them obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a similar argument, while these prior decisions bolstered Plaintiff's position, no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial would be expert-intensive and thus costly. Plaintiff would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for all Plaintiffs. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

Additionally, Plaintiff's counsel possess extensive experience in all types of wage and hour litigation. Potashnick Decl., ¶¶ 3-6. In light of the novelty and difficulty of the questions presented,

the skill, experience, reputation, and ability of Plaintiff's attorneys, and "undesirability" of the case, *Kerr* factors (2), (3), (9) and (10) strongly support Plaintiff's counsels' requested fee.

**Kerr Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.**

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord In re Bluetooth*, 654 F.3d at 942. As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiff. The total settlement amount is the result of good faith, but contentious arm's-length negotiation and represents an excellent result for the opt-ins in this case. Some opt-ins will receive substantial payments for their alleged unreimbursed vehicle expense. And while some opt-ins will receive less than others – based on relatively fewer miles driven within the applicable recovery period – no opt-in will receive less than $50.00.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiff's Counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the Named Plaintiff signed a contingency fee agreement with Plaintiff's Counsel agreeing to fees equaling 35% of the common fund. However, Plaintiff's Counsel cut their percentage to one-third (1/3) in an effort to resolve this case and increase the amount paid to Plaintiffs.

**Kerr Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.**

To date, Plaintiff's counsel's firms combined spent approximately 125 hours litigating this

case with no assurance of any recovery at all. Potashnick Decl, ¶ 13; Karsh Decl., ¶13. This includes time spent investigating the facts, preparing and filing pleadings, reviewing documents produced by the Named Plaintiff and by Defendants, analyzing Defendants' payroll, delivery, and reimbursement data, communicating with the Named Plaintiff, creating computerized damages models, researching and drafting a mediation statement, participating in the mediation, negotiating the terms of the settlement, drafting approval papers, seeking Court approval of the settlement, and advising numerous class members. *Id.*

Plaintiff's Counsel's lodestar is based on their standard hourly billing rates for work of this type. Mr. Potashnick and Mr. Karsh have been approved at similar fee rates by district courts around the nation. *See, e.g., Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (ECF Doc. # 139 (Ex. 5), at 17-18 (order approving settlement, including all fees sought)) & (ECF Doc. # 138 (Ex. 6), at 5, 12 & 13 (seeking fees for Mark Potashnick at rate of $500.00 per hour); *Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (Ex. 7) (awarding $500.00 per hour for Mark Potashnick); *Heuberger v. Smith,* 2019 U.S. Dist. LEXIS 118174, *13-14 (N.D. Ind. Jan. 4, 2019) (approving $450.00 per hour for Mark Potashnick and Eli Karsh); *Hoffman v. Poulsen Pizza, LLC,* 2017 U.S. Dist. LEXIS 459, *21-22 (D. Kan. Jan. 3, 2017) (approving $450.00 per hour for Mark Potashnick); *Hackett,* 259 F.Supp.3d at 367-69 & n.2 (same); *Bodon v. Domino's Pizza, LLC,* 2015 U.S. Dist. LEXIS 82039, *27-28 (E.D.N.Y. Jun. 4, 2015) (same).

These rates, and much higher, have been approved as reasonable in numerous wage-and-hour cases, and courts in this Circuit frequently approve substantially higher hourly rates. *See, e.g.*, *Pittsley v. City of El Cajon,* 2019 U.S. Dist. LEXIS 141335, *19-20 (S.D. Cal. Aug. 19, 2019) (finding $650.00 per hour to be reasonable rate for wage and hour litigator with over 25 years

experience); *Thomas v. Kellogg Co.*, Case No. 3:13-cv-05136-RBL (W.D. Wash.) (Dkt. 537, p. 25; noting rates as high as $800/hr. in wage-and-hour collective action); *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017) (approving hourly rates ranging from $300.00 to $900.00); *Velazquez v. Int'l Marine and Indus. Applicators, LLC*, 2018 U.S. Dist. LEXIS 21884, *25 (S.D. Cal. Feb. 9, 2018) (approving fee award; lodestar cross-check at hourly rate up to $800.00); *Bickley v. CenturyLink, Inc.*, 2016 WL 9046911, *5 (C.D. Cal. Nov. 29, 2016) (approving hourly rates of $650.00-$750.00 in misclassification / overtime case). And, while the lodestar cross-check reflects a multiplier of 1.44 based on time incurred to date ($83,333.33 fees and costs - $2,945.38 costs = $80,387.50 fees / $55,700.00 lodestar to date = 1.44) (Ex. 2, ¶¶ 13, 17 & 18; Ex. 3, ¶¶ 13-15), such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Accordingly, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4, or even higher. *See id.* (approving multiplier of 3.65).

This work naturally precluded counsel from pursuing other litigation opportunities.

***Kerr* Factor (12): Awards in Similar Cases.**

Plaintiff's counsel's fees equal to one-third (1/3) of the total recovery have been approved within this Circuit in the same claims against other pizza delivery companies. *Kirkwood,* 2019 U.S. Dist. LEXIS 10146, at *1-4; *Armes,* 2017 U.S. Dist. LEXIS 89920, at *12-15; *Larson* (Ex. 4); *see, e.g.*, *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, at 1123-27 (C.D. Cal. 2008) (noting Silber and Goodrich's conclusion "that a 33% fee award is both reasonable, and in line with the general market for contingent fee work"); *Barbosa*, 297 F.R.D. 431, at 451 (33% of the class recovery is reasonable and approved based on the risk of litigation, fee awards in other wage-

and-hour cases). Further, because the common fund is a relatively low fund, a 33% recovery is fair and commonplace for contingent fee work. *See Van Vranken v. A. Richfield Co.*, 901 F.Supp. 294, 297 (N.D. Cal. 1995) (funds under the $10 million mark are considered smaller, justifying a higher percentage attorney's fee). As such, Plaintiff's counsels' fee recovery in this case is more than reasonable.

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiff's counsel in obtaining relief for all Defendants' delivery drivers should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## V.    Plaintiff Abel Deserves a Service Award

The Settlement Agreement provides for a reasonable service award of $3,500.00 to the Named Plaintiff. (Ex. 1, ¶2.1(C)). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d

872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Factors bearing on the decision of whether to grant a service award include, as relevant here, the actions taken by the named plaintiff to protect the interests of all other delivery drivers, the degree to which the delivery drivers have benefited from those actions, and the amount of time and effort the named plaintiff expended on the litigation. *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Named Plaintiff Abel substantially assisted counsel in achieving this settlement on behalf of all of Defendants' delivery drivers who have been employed during the recovery period.  He first sought and obtained counsel with specific experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the interests of all of Defendants' delivery drivers and to obtain a substantial recovery on their behalf. He participated throughout the day-long mediation and subsequent settlement efforts, and vigorously negotiated on behalf of all of Defendants' delivery drivers. Potashnick Decl., ¶12.  The other delivery drivers have substantially benefitted from the Named Plaintiff's efforts. In light of these efforts, a modest service award is justified. The award also falls well within the range of other service awards typically approved by courts in this Circuit. *See, e.g.*, *Staton*, 327 F.3d at 977 (noting the Ninth Circuit's previous approval of service awards of $5,000 to named plaintiffs and collecting other cases); *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014) (approving $5,000 service awards to named plaintiffs); *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, at 1181 (S.D. Cal. 2016) (same); *Harris v. Vector Mktg.*

*Corp.*, 2012 U.S. Dist. LEXIS 13797, *20-21 (N.D. Cal. Feb. 6, 2012) (noting that a $5,000.00 service award is "presumptively reasonable" and supported by ample case law and granting the named plaintiff a $12,500.00 award). Defendants do not oppose the service award.

Importantly, Mr. Abel will provide a general release as additional consideration for a service award, which is another reason to approve that award. *Ruiz v. JCP Logistics*, 2016 U.S. Dist. LEXIS 189280, *36 (C.D. Cal. Aug. 12, 2016) (broader release favors approval of service award).

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that certifies the state law claims to proceed as class actions for settlement purposes, finally approves the parties' settlement, and dismisses the claims with prejudice, with each party to bear its own fees and costs except as previously agreed between them.

Respectfully submitted,

Respectfully submitted,
**WEINHAUS & POTASHNICK**
*/s/ Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**D'ALTON LAW FIRM, P.C.**
William D'Alton (MT Bar #4246)
1643 24th Street West, Suite 314
Billings, Montana  59102
Telephone: (406) 245-6643
Facsimile:  (406) 245-6693
bill@daltonlawpc.com

**LIBERMAN, GOLDSTEIN & KARSH**
Eli Karsh (Mo. Bar # 43061)
(admitted *pro hac vice*)
230 South Bemiston Ave., Suite 1200
Clayton, Missouri  63105
Telephone: (314) 862-3333
Facsimile:  (314) 863-0605
elikarsh@aol.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the foregoing was served on all attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

*/s/ Mark Potashnick*