# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| SHAWN ABEL, individually and on behalf of similarly situated persons, | ) Case No. 1:18-cv-00166-SPW |
| Plaintiff, | ) |
| | ) **JOINT STIPULATION AND** |
| vs. | ) **SETTLEMENT AGREEMENT** |
| AUSTYN SPENCER ENTERPRISES, LLC, BLUE SKY PIZZA, LLC and RHETT HIGHTOWER, | ) |
| Defendants. | ) |

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Shawn Abel ("Plaintiff"), individually and on behalf of the class of individuals he seeks to represent (collectively the "Class" or "Class Members") and Austyn Spencer Enterprises, LLC; Blue Sky Pizza, LLC; and Rhett Hightower and their related entities (collectively "Defendants" or "Austyn Spencer") (together with Plaintiff, the "Parties").

## RECITALS

WHEREAS, Plaintiff filed the above-caption suit against Defendant in the United States District Court for the District of Montana, Billings Division alleging that Defendant failed to pay him and similarly situated delivery drivers minimum wage because their vehicle expense reimbursements were insufficient to cover the costs of driving their personal vehicles to perform their jobs in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Montana Minimum Wage and Overtime Compensation Act ("MMWOCA"), Mont. Code Ann. § 39-3-401 *et seq.* ("the Litigation"); and

WHEREAS, the Complaint has been amended by consent to seek relief under the Idaho Minimum Wage Law ("IMWL"), Idaho Code § 44-1501 *et seq.*

WHEREAS, Defendants deny Plaintiff's allegations in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability, wrongdoing, or damages, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiff's Counsel has vigorously advocated for the rights of the Class and has analyzed extensive delivery, payroll and mileage reimbursement data produced by Defendant; and

WHEREAS, the Parties mediated their dispute for a full day in Orlando, Florida on August 6, 2019, which was conducted by an experienced wage and hour class action mediator, Kay Wolf, Esq. (the "Mediator"), and thereby reached an accord resulting in this Agreement; and

WHEREAS, Plaintiff's Counsel have analyzed and evaluated the merits of the claims against Defendants, the merits of Defendants' responses to those claims and their potential defenses, the potential damages to be recovered at a trial, and the impact of this Agreement on the Plaintiff and the Class; and

WHEREAS, based on their analysis and evaluation of the relevant factors under the law, and recognizing the risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in no recovery whatsoever for Plaintiff and the Class, might result in a recovery less favorable to Plaintiff and the Class, or might result in a recovery more favorable to Plaintiff and the Class, and the likelihood that any recovery for any portion of Plaintiff and the Class would not occur for several years, counsel for the Parties are satisfied that the terms and conditions of the Agreement are fair, reasonable, and adequate, and Plaintiff's Counsel are satisfied that this Agreement is in the best interest of Plaintiff and the Class.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## I.   DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   **Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release.

**1.2**   **Acceptance Period.** "Acceptance Period" means the two hundred forty (240) days that a Class Member has to sign and cash a Settlement Check or request a replacement check.

**1.3**   **Claim Form.** "Claim Form" means **Exhibit B**, the form approved by Austyn Spencer Enterprises, LLC; Blue Sky Pizza, LLC; and Rhett Hightower and Class Counsel and subject to Court approval, which each Class Member must complete in full and return, via first class mail with a postmark on or before the date that is seventy-five (75) days following the mailing of the Notices, to recover a portion of the Settlement proceeds.

**1.4**   **Class Counsel.** "Class Counsel" or "Plaintiff's Counsel" means Weinhaus & Potashnick, Liberman, Goldstein & Karsh, and D'Alton Law Firm, P.C.

**1.5**   **Class Members.** "Class Members" means the FLSA Class Members and the Montana and Idaho Class Members. Defendants have stated there are approximately one thousand and thirty-four (1,034) Class Members.

**1.6**   **Class Period.** "Class Period" means November 21, 2015 through August 6, 2019.

3

1.7 **Court.** "Court" means the United States District Court for the District of Montana, Billings Division.

1.8 **Days.** "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

1.9 **Defendant.** "Defendant" or "Austyn Spencer Enterprises, LLC" means Austyn Spencer Enterprises, LLC, Blue Sky Pizza, LLC; and Rhett Hightower and their related entities.

1.10 **Defendant's Counsel.** "Defendant's Counsel" means Kathleen McLeod Caminiti, J. Hagood Tighe and Sheila M. Willis of Fisher & Phillips LLP. For purposes of providing notices under this Agreement, Defendant's Counsel shall refer to Kathleen McLeod Caminiti.

1.11 **Delivery Driver.** "Delivery Driver" or "Delivery Drivers" means all current or former delivery drivers who delivered a minimum of 100 customer orders for Defendant in Montana or Idaho during the period commencing November 21, 2015 through August 6, 2019.

1.12 **Effective Date.** "Effective Date" shall be the last of the following dates:

(A) If there is no appeal of the Court's Order Granting Final Approval of Settlement, the date thirty-five (30) days after entry of such Order; or

(B) If there is an appeal of the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of Final Approval of the terms and conditions of this Agreement.

1.13 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.14 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, and Dismissal of the Litigation with prejudice.

4

1.15   **Montana and Idaho Class Members.** "Montana and Idaho Class Members" means all persons employed as delivery drivers and who delivered at least one hundred (100) customer orders in Montana or Idaho between November 21, 2015 through August 6, 2019 who do not opt-out of this Litigation. Montana and Idaho Class Members may also be FLSA Class Members by submitting a timely and valid Claim Form.

1.16   **FLSA Class Members.** "FLSA Class Members" means any Delivery Driver who files a claim form.

1.17   **Litigation.** "Litigation" means the claims represented in the above-captioned class and collective actions alleging violations of the FLSA and Montana and Idaho wage and hours laws.

1.18   **Maximum Settlement Amount.** "Maximum Settlement Amount" means the maximum amount of Two Hundred Fifty Thousand Dollars ($250,000.00), plus the mediator's fee of Six Thousand Thirty Nine Dollars ($6,039.00) which Defendants have agreed to pay to fully resolve and settle this Litigation, including all claims for unpaid wages, overtime, penalties, fines, liquidated damages, interest, attorney's fees, costs, taxes, claims administration fees, court costs and any other costs whatsoever, and any and all amounts to be paid to or on behalf of Class Member, and any Court-approved Service Award. Under no circumstance will Defendants be required to pay more than the gross total of Two Hundred Fifty Thousand Dollars ($250,000.00), plus the mediator's fee of Six Thousand Thirty Nine Dollars ($6,039.00).

1.19   **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Maximum Settlement Amount after deductions for (1) Court-approved attorneys' fees and costs for Class Counsel; (2) a Court-approved Service Award to the Plaintiff as specified herein; and (3) settlement administration costs.

1.20   **Notice.** "Notice" means the Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, a copy of which is attached as **Exhibit A.**

1.21   **Objector.** "Objector" means an individual who files an objection to this Agreement, but does not include any individual who opts-out of this Agreement.

5

1.22 **Opt-In Plaintiff**. "Opt-in Plaintiff" means those FLSA Class Members who file Claim forms in the Litigation within seventy-five (75) days from the mailing of the Notice to them.

1.23 **Opt-out Statement.** "Opt-out Statement" is a written and signed statement that an individual Montana and Idaho Class Member has decided to opt-out and not be included in this Agreement.

1.24 **"Participating Class Member"** means a Class Member who timely submits a Valid Claim Form in accordance with Section 2.5 of this Agreement.

1.25 **Parties.** "Parties" shall mean, collectively, Plaintiff, all Opt-In Plaintiffs, all Montana and Idaho Class Members and Defendant.

1.26 **Plaintiff.** "Plaintiff" shall mean Shawn Abel.

1.27 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, directing the manner and timing of providing Notices to the Class Members, and staying all proceedings pending final approval of the settlement.

1.28 **Settlement Fund.** "Settlement Fund" means the account established by Class Counsel into which Defendants will deposit that portion of the Maximum Settlement Amount necessary to pay: (1) Court-approved attorneys' fees and costs for Class Counsel; (2) Court-approved Service Award to the Plaintiff as specified herein; (3) all funds due Montana and Idaho Class Members due under the terms of this Agreement; (4) the claims of all Class Members who returned a completed Claim form; and (5) The Claims Administrator's maximum anticipated settlement administration.

1.29 **Released Parties.** The "Released Parties" means Austyn Spencer Enterprises, LLC; Blue Sky Pizza, LLC; and Rhett Hightower and each of its/his/their parents, divisions, affiliates, subsidiaries, predecessors, successors, heirs and assigns and their present and former officers, directors, shareholders, members, managers, employees, franchisors (including Domino's Pizza, LLC), fiduciaries, trustees, employee

6

benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity which could be jointly liable with any of them.

**1.30   Settlement Checks.**   "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund Calculated in accordance with this Agreement.

## 2.   APPROVAL AND CLASS NOTICE

**2.1   Binding Agreement.**   This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2   Settlement Claims Administration.**   The Parties agree to jointly identify a settlement claims administrator to administer the Settlement. The Claims Administrator will be responsible for locating Class Members through reasonable efforts described below; mailing of Notices and Claim Forms to Class Members in accordance with the Court's Preliminary Approval Order; responding to Class Member inquiries; working with counsel to resolve disputes relating to Class Members' number of deliveries of the settlement fund; reporting on the state of the Settlement to the counsel (including the number of Opt-Out Statements received); distributing the Service Award; calculating the amounts of the Settlement Checks in accordance with the Court's Final Approval Order; distributing Settlement Checks to Class Members; providing counsel with any information related to the administration of the settlement upon request; and performing such other duties agreed upon by the Parties.

2.3   In the event of a dispute regarding the calculation of a Class Member's Settlement Check or a Class Member's number of deliveries Class Counsel and Defendants' Counsel will confer in good faith to resolve the dispute.

2.4   Defendants agree to provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist The Claims Administrator in locating Class Members.

**2.3    Preliminary Approval Motion.**

(A)    Within thirty (30) days after the execution of this Agreement, Plaintiff will submit to Defendants a draft Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Plaintiff will submit to the Court a proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing; and a Claim Form and a proposed Preliminary Approval Order.

Defendants will review and make any comments and/or suggestions with respect to the Preliminary Approval Motion and related documents within seven (7) days after receipt of the draft Preliminary Approval Motion from Class Counsel. Plaintiff will retain the right to have ultimate approval of the final Preliminary Approval Motion and will file the final Preliminary Approval Motion.

(B)    The Proposed Preliminary Approval Order will include the findings required for an FLSA collective action and a Montana and Idaho class action and will provide for the stay of further proceedings pending final approval of the settlement. The Preliminary Approval Motion also will seek to set the date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which will be seventy-five (75) days from the mailing of the Notice to the Class Members.

(C)    In the Preliminary Approval Motion, Plaintiff will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate, and reasonable; (2) incorporate the terms of the Release, as described herein; (3) finally certify the FLSA collective;  (4) dismiss the Litigation with prejudice; (5) award Class Counsel fees and costs; and (6) award Service Award to the Plaintiff as more fully set forth herein. Defendants will not oppose the Preliminary Approval Motion, provided that Defendants' counsel have communicated all of their comments and suggestions on the motion as set forth herein.

8

(D)     If the Court denies the Preliminary Approval Motion, unless the Parties agree to seek reconsideration of the ruling or attempt to renegotiate the settlement and seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action and to contest the merits of the claims being asserted in the Litigation.

(E)     The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

## 2.4  Notice to Class Members.

(A)     Within ten (10) days of the Court's issuance of a Preliminary Approval Order, Defendants will provide The Claims Administrator, in electronic form, for all Class Members the following information: name, Social Security Number, last known address, date(s) of hire, date(s) of termination or last check date(s) as a delivery driver, and number of deliveries made by each delivery driver within the Class Period as that information exists on file with Defendants ("Class List").

(B)     Within twenty (20) days of the receipt of the Class List from Defendants, The Claims Administrator will mail to all Class Members, via United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing and Claim Form (**Exhibits A and B** hereto).

    (1)     The Notice shall inform the Class Members of their approximate settlement allocations and total settlement amount, which will be on the second page, unless otherwise directed by the Court.

    (2)     The Claim Form shall be a one-page form, that requires the Class Member to provide his or her name, signature (under penalty of perjury), date of signing, and last four

9

digits of their social security number; and which can be returned by U.S. Mail.

(C)     The Claims Administrator will take reasonable and customary steps to obtain the correct address of any Class Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement.

## 2.5   Eligible and Participating Class Members

To be eligible for a Settlement Check in an amount greater than Fifty Dollars ($50.00), Class Members must return a completed, valid and signed Claim Form postmarked within seventy (75) days from the mailing of the Notice to them.  Upon submitting a valid and timely Claim Form, Class Members will become FLSA Class Members.

## 2.6   Montana and Idaho Class Member Opt-Outs.

(A)     Montana and Idaho Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First-Class United States Mail, postage prepaid, a written, signed statement to Class Counsel that includes his or her name, address, and telephone number and words to the effect that he or she wishes to opt-out of the Austyn Spencer Enterprises, LLC, Blue Sky Pizza, LLC and Rhett Hightower settlement ("Opt-out Statement").  To be effective, an Opt-out Statement must be post-marked within seventy-five (75) days from the Preliminary Approval Order (the "Opt-out Deadline").  An Opt-out Statement that does not fully comply with this provision will be invalid.

(B)     Montana and Idaho Class Members whose first mailing was returned to The Claims Administrator as undeliverable will be allowed to opt-out or object,  but no later than seventy-five (75) days from The Claims Administrator's original mailing of the Notices and Claim Forms.  No mailing shall occur more than forty-five (45) days after the first mailing to Class Members.

10

(C)    The Claims Administrator shall keep accurate records of the dates on which it sends notices and opt-in forms to Montana and Idaho Class Members.

(D)    The Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Defendants' Counsel and Class Counsel not later than three (3) days after receipt thereof. Class Counsel will also, within five (5) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements. Class Counsel will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as Class Counsel is relieved of its duties and responsibilities under this Agreement.

(E)    Any Montana and Idaho Class Member who timely submits a Claim Form and who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, as set forth in this Agreement. If a Montana and Idaho Class Member submits a Claim Form and an Opt-out Statement, Class Counsel shall promptly attempt to contact the Montana and Idaho Class Member to determine the Montana and Idaho Class Members' true intention. If the Montana and Idaho Class Member does not clarify his or her true intention in writing before the Final Approval Hearing, the Opt-out Statement shall be deemed valid and the Claim Form shall be deemed invalid.

**2.7**    **Defendants' Ability to Revoke.** Defendants have the right to revoke this Agreement within fifteen (15) days after the expiration of the opt-out period if five (5) percent or more of the Class Members timely and properly opt-out under the terms proscribed in this Agreement. If Defendants revoke this Agreement, the Litigation will proceed as if there was no attempt at settlement. In that event, the class and collective actions certified for purposes of settlement shall be decertified without prejudice, and Defendants may contest whether this Litigation should be maintained as a class action or collective

action and contest the merits of the claims being asserted by Plaintiff in the Litigation. If Defendants revoke this Agreement, Defendants will pay any additional costs incurred from The Claims Administrator's mailing of a notice advising the Class Members of Defendants' revocation.

## 2.8 Objections to Settlement.

(A) Any Class Member who wishes to object to the settlement must do so in writing. To be considered, a written objection must be mailed to The Claims Administrator via First-Class United States Mail, postage prepaid, and be received by The Claims Administrator by a date certain seventy-five (75) days from the mailing of the Notice to the Montana and Idaho Class Member. The written objection must include words to the effect that he or she objects to the settlement in the Austyn Spencer Enterprises, LLC, Blue Sky Pizza, LLC and Rhett Hightower litigation, as well as all reasons for the objection. Any reasons not included in the written objection will not be considered. The written objection must also include the name, address, and telephone numbers for the Class Member making the objection. The Claims Administrator will stamp the date received on the original and send copies of each objection to Defendants' Counsel and Class Counsel by email no later than three (3) days after receipt thereof. The Claims Administrator will also file the date-stamped originals of any and all objections with the Court within five (5) days.

(B) A Class Member who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear or speak at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including to the effect that he or she intends to appear and speak at the fairness hearing in his or her written objection. If an Objector does not fully comply with this provision, the Objector may not appear and speak at the Fairness Hearing. An Objector may withdraw his or her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with

all procedures provided in this Section and the previous Section. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

(D)     If the Court overrules the Class Member's filed objections, and they are deemed to have submitted a valid Claim Form, then they will be considered a Participating Class Member.

**2.9     Motion for Judgment and Final Approval.** Not later than fifteen (15) days before the Fairness Hearing, Plaintiff will submit a Motion for Judgment and Final Approval. Defendants will review and make any comments and/or suggestions with respect to the Motion for Judgment and Final Approval within seven (7) days after receipt of the draft Motion for Judgment and Final Approval from Class Counsel. Plaintiff will retain the right to have ultimate approval of the final Motion for Judgment and Final Approval.

**2.10     Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the Montana and Idaho Class for purposes of settlement; (b) enter Judgment in accordance with this Agreement; (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Montana and Idaho Class Members who have not timely opted out pursuant to Section 2.6; (d) finally certify the FLSA collective; (e) approve the FLSA settlement; and (e) dismiss the Litigation with prejudice.

**2.11     Effect of Failure to Grant Final Approval.** The settlement and this Agreement are contingent upon the Court's approval of the settlement and this Agreement. In the event (1) the Court fails to enter a Final Approval Order approving the settlement (failure by the Court or an appellate court to award or sustain the full amount of the Service Awards or Class Counsel's attorney's fees and expenses will not constitute failure to approve the settlement or a material modification of the settlement); and (2) the Parties do not jointly agree to (a) seek

reconsideration or appellate review of the decision denying entry of judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement, then the settlement and this Agreement will become void *ab initio*. In the event the settlement and this Agreement becomes null and void:

(A)   The Litigation will proceed as if no settlement had been attempted, Defendants will have no payment obligations whatsoever and Defendants will have no obligation to fund the settlement. In that event, the class certified for purposes of settlement shall be decertified without prejudice, Defendants may contest whether this Litigation should be maintained as a class or collective action and contest the merits of the claims being asserted by Plaintiff in this action, and the parties will split evenly any claims administration expenses.

(B)   Notice will be provided to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by Class Counsel via First-Class United States Mail, postage prepaid, to the addresses used by Class Counsel in the mailing of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness and Hearing.

(C)   This Agreement (including Exhibits) will not be used for any purpose in connection with the Litigation, any future litigation, or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint, except that the non-disclosure obligations in Section 5.11 below will remain in effect.

(D)   Plaintiff shall remit to Defendants one-half (1/2) of the mediator's fee, in the amount of three thousand dollars ($3,000.00).

## 3.   SETTLEMENT TERMS AND ADMINISTRATION

**3.1   Settlement Amount.** Defendant agrees to the Maximum Settlement Amount of Two Hundred Fifty Thousand Dollars ($250,000.00), plus the mediator's fee of Six Thousand Thirty Nine Dollars ($6,039.00), which shall be the maximum amount necessary pursuant to the terms of this Agreement to fully resolve and satisfy any claim for attorneys' fees and costs approved

by the Court, any and all amounts to be paid to or on behalf of Class Members, and any Court-approved Service Award in the amount of Three Thousand Five Hundred dollars ($3,500.00) to Plaintiff. Under no circumstances will Defendants be required to pay more than the gross total of Two Hundred Fifty Thousand Dollars ($250,000.00), plus the mediator's fee of Six Thousand Thirty Nine Dollars ($6,039.00) under the terms of this Agreement.

**3.2    Portion of Settlement Amount Payable as Attorneys' Fees and Costs.**

(A)    At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees and litigation costs of no more than one third of the Maximum Settlement Amount (not to exceed Eighty Three Thousand Three Hundred Thirty Three and 33/100 Dollars ($83,333.33) and the amount of administration costs (which are separate from litigation costs) to be paid from the Maximum Settlement Amount. Defendants will not oppose this application.

(B)    The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.3    Portion of Settlement Amount Payable as Service Awards**

(A)    In return for the risk he incurred and his service on behalf of the entire Class, Plaintiff will apply to the Court to receive Three Thousand Five Hundred dollars ($3,500.00) as a Service Award from the Maximum Settlement Amount. The total amount of any Service Awards will be deducted from the Maximum Settlement Amount. Defendants will not oppose such application. In consideration for that award, Plaintiff will agree to an additional general release of all claims as defined in Section 4.1(C). To the extent that the Court does not approve any Service Awards, Plaintiff will only be subject to the releases defined in Sections 4.1(A) and (B).

(B)     The application for Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**3.4     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)     All Montana and Idaho Class Members will receive Fifty Dollars ($50.00).

(C)     All Opt-in Plaintiffs will receive a share of the Net Settlement Fund remaining after distribution of Fifty Dollars ($50.00) to each Montana and Idaho Class Member pursuant to the following formula: (each Class Member's total deliveries during the Class Period / all Class Members' deliveries during the Class Period) x Net Settlement Fund remaining after distribution of Fifty Dollars ($50.00) to each Montana Class Member, the service award, attorney's fees, litigation costs, and administration costs.

(D)     The calculation of all deliveries made pursuant to this Section 3.4 shall be based on Defendants' business records.

**3.5     Tax Characterization.**

(A)     For tax purposes, 100% of payments to Class Members pursuant to Section 3.4 shall be treated as reimbursement for business expenses, shall not be subject to deductions, and shall not be reported on either an IRS Form W-2 or IRS Form 1099.

(B)     Any Court-approved Service Award shall be treated as non-employment income, shall not be subject to deductions, and shall be reported on an IRS Form 1099.

(C)     Plaintiff acknowledges and agrees that each Class Member will be solely responsible for all taxes, interests and penalties due with respect to any payment received pursuant to this Agreement.

**3.6    Settlement Payments to Participating Class Members.**

(A)   By no later than twenty (20) days after the Effective Date: (1) The Claims Administrator shall provide Defendants' Counsel and Class Counsel with a complete list of all disbursements out of the Settlement Fund, including all settlement checks to be disbursed to all Class Members, Service Award to Plaintiff and attorney's fees and costs.

(B)   By no later than twenty (20) days after the Effective Date, The Claims Administrator will mail: (1) Settlement Checks to all Montana and Idaho Class Members; (2) Settlement Checks to FLSA Class Members who have submitted valid claim forms, calculated in accordance with Section 3.4 hereof; and (3) a check to Plaintiff for his Service Award, as approved by the Court.

(C)   Absent other instructions, the above Settlement Checks issued pursuant to this Section will be mailed by The Claims Administrator to the Participating Class Member at the address listed on the Participating Class Member's Notice Form.  If a Participating Class Member's Settlement Checks are returned with a forwarding address, The Claims Administrator shall promptly re-mail the Notice Package to the forwarding address. If a Participating Class Member's Settlement Checks are returned without a forwarding address, The Claims Administrator will perform an Accurint search in an effort to determine the participating Class Member's current address. If a new address is obtained, The Claims Administrator will promptly re-mail the Settlement Checks to the Class Member.  If a new address is not obtained from the U.S. Post Office or through a reasonably diligent search, Class Counsel and Defendant's Counsel will confer in good faith, on a case-by-case basis, regarding whether to conduct further traces.

(D)   If a Participating Class Member reports that his/her Settlement Checks were lost, stolen, or undelivered, Defendants shall promptly issue a stop payment order on the original checks and provide The Claims Administrator counsel new checks to such Participating Class Member.

17

(E)    Any Participating Class Member who does not cash their Settlement Check(s) will still be bound by all terms and conditions of this Agreement, including the releases contained in Section 4 and will still be deemed a Participating Class Member.

(F)    The Claims Administrator shall include the following release language on the back of each Settlement Check (or in a separate document to be included in the same envelope the release language will not fit on the back of each Settlement Check), including the checks for the Service awards:

> My signature or negotiation of this check constitutes a full, final and complete release by me of all Released Claims against Austyn Spencer Enterprises, Inc. and Released Parties, as defined in the Joint Stipulation and Settlement Agreement entered in the matter, entitled *Shawn Abel v. Austyn Spencer Enterprises, LCC, Blue Sky Pizza, LLC, and Rhett Hightower*, Case No. 1:18-cv-00166-SPW.

(G)    Any unclaimed funds and un-negotiated Settlement Checks to Class Members that remain uncashed two hundred (240) days after the date of mailing shall be promptly distributed *cy pres* to a cancer charity supporting the local community in Montana.

**3.7**    **Settlement Payments Do Not Trigger Additional Benefits or Incentives.** All payments to Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members. The Parties agree and the Class Members acknowledge that the payments provided for in this Agreement are the sole payments to be made to the Class Members in connection with this Settlement or the Litigation, and that the Class Members are not entitled to any new or additional compensation, benefits or incentives as a result of having received such payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might currently be in effect or have been in effect during the period covered by this Settlement).

## 4.   RELEASE

### 4.1   Release of Claims.

(A)   Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Class Member who has not submitted a valid and timely request to opt-out of the settlement in accordance with Section 2.6, shall, on behalf of himself and his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully and finally release, remise, and finally and forever discharge the Released Parties (as defined in Section 1.29) from all state law claims asserted in Plaintiff's Complaint and all state law claims which could reasonably be based on the allegations of Plaintiff's Complaint, including under-reimbursement of driver expenses and tip credit notice claims, and all related claims arising under the laws of the state of Montana, including but not limited to The Montana Minimum Wage and Overtime Compensation Act Mont. Code. Ann. § 39-3-40 *et seq.*, the Idaho Wage Minimum Wage Law ("IMWL"), Idaho Code § 44-1501 *et seq.*, all local laws, all claims and all claims asserted in the Litigation ("Released Claims"). The Released Claims include all such claims for unpaid regular or overtime wages, claims under any wage and hour and wage payment law claims (including statutory claims), all derivative benefit claims (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits), arising under any state or local wage and hour law or regulation, interest on such claims, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind of nature whatsoever related to such claims from the date of the earliest statute of limitations applicable to the claims of any Class Member through August 6, 2019.

(B)   In addition to the Released Claims, by signing and timely returning a completed Claim Form, all Opt-in Plaintiffs who do not timely opt-out fully, finally and forever release, remise and discharge the Released Parties from all claims asserted in

Plaintiff's Complaint and all claims which could reasonably be based on the allegations of Plaintiff's Complaint, including the FLSA claims (including but not limited to FLSA claims codified at 29 U.S.C. § 201 *et seq.*; 29 C.F.R. § 531 *et seq.*) (the "Released FLSA Claims") including under-reimbursement of driver expenses and tip credit notice claims arising on or before August 6, 2019. The Released FLSA Claims include all FLSA claims for unpaid regular, straight time or overtime wages, tips, for reimbursement or expenses, any related wage and hour and wage payment law claims, all derivative benefit claims (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits), any state or local wage and hour or unpaid wages type of claims, interest on such claims, liquidated damages, penalties, and attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind or nature whatsoever related to such claims through Aug. 6, 2019.

(C)     In addition to the releases contained in Sections 4.1(A) and (B) above, and in consideration of the payment(s) which are to be received under Section 3.3(A), Plaintiff, his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Released Parties of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which he may have against Released Parties as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the Montana Civil Rights Act of 1992, as amended, the Montana

Whistleblower Act, the Montana Minimum Wage and Overtime Compensation Act, Mont. Code Ann. § 39-3-401; Montana's state laws related to: Blacklisting and Protection of Discharged Employees (Mont. Code Ann. § 39-2-801 *et seq.*); Deception as to Character of Work (Mont. Code. Ann. § 39-2-303); Montana's anti-discrimination prohibitions (Mont. Code Ann. § 39-2-313); Montana's Human Rights Code (Mont. Code Ann. § 49-1-101 *et seq.*); any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against the Released Parties, based upon any conduct occurring up to and including the date of Plaintiff's execution of this Agreement.

(D)   Except as provided in this Agreement, Class Counsel and the Plaintiff, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Released Parties for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

**4.2   Non-Admission of Liability.** Defendants deny that they violated the law in any manner asserted in, alleged in, or related to the Litigation. Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefit to Defendants' business interests; (ii) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (iii) put the claims in the

Litigation finally to rest.  Nothing in this Agreement shall be deemed, construed or used as an admission of liability, culpability, negligence, wrongdoing, or unlawful conduct of any kind or nature whatsoever by or on behalf of Defendants or Released Parties, or as an admission that a class should be certified for any purpose other than settlement purposes.

**5.    INTERPRETATION AND ENFORCEMENT**

**5.1    Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to effectuate this Agreement, including during any appeals, and to obtain the Court's approval of this Agreement and all of its terms and to defend this Agreement and the settlement from any legal challenge. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. The Parties will fully cooperate with each other to accomplish, implement and effectuate the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement.

**5.2    No Assignment**.  Class Counsel and the Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3    Entire Agreement**.  This Agreement constitutes the entire, complete and integrated agreement between the Parties with regard to the subject matter contained herein, including all settlement terms, and supersedes all previous oral or written agreements (including the summary of settlement terms executed at the mediation), and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.  This Agreement may not be amended or modified except by a writing duly signed by the Parties or their duly authorized representatives.

**5.4    Binding Effect**.  This Agreement shall be binding upon the Parties and, with respect to the Plaintiff, the Opt-in Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators,

executors, beneficiaries, conservators, trustees, attorneys, successors and assigns.

**5.5    Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length with the assistance of a professional class action wage and hour Mediator, Kay Wolf, Esq. ("Mediator"). All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6    Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience or reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7    Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8    Blue Penciling/Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, with the exception of the release contained herein, such finding shall not affect the validity of the remaining portions of this Agreement which will remain in full force and effect and will be construed and enforced to effect the purposes thereof to the fullest extent permitted by law.

**5.9    Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Montana, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10    Reference of Disputes to Mediator.**

The Parties agree that, in the event of any dispute regarding the interpretation or validity of or otherwise arising out of the settlement or this Agreement, the Parties shall first attempt in good faith to resolve any such disputes through the Mediator. In the event that the Mediator

determines that she is unable to resolve any such dispute, the Parties agree that they shall be subject to the jurisdiction of the Court as set forth in the subsequent paragraph.

5.11   **Waivers, Etc. to Be in Writing**.   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12   **Non-Disclosure and Publicity.**

(A)   Prior to submission of the Agreement to the court for preliminary approval, the Parties and their counsel will keep the terms, conditions and existence of the settlement and this Agreement strictly confidential, and will not contact, or comment to, the media about the settlement or this Agreement, or disclose, make known, discuss or relay orally, or in writing, electronically or otherwise, the existence or terms of the settlement or this Agreement, or any information concerning or discussions leading up to the settlement or this Agreement. After submission to the Court of the Motion for Preliminary Approval, neither the Plaintiff nor Class Counsel, or Defendants or Defendants' Counsel, may make any public comment, make or have any communications to or with the press or media, or make any form of advertising or public announcement, utilize any form of social media, or issue any press release or media release, regarding the Litigation, this Agreement or the settlement, except to state the amount of the settlement and to refer to the Court filings. Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings a summary of the terms of this Agreement, and may disclose their

24

representation and fact that the case has been resolved pursuant to a settlement agreement in their personal biographies and on their websites.

(B)   Any communication about the settlement to Class Members prior to the Court-approved mailing will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Court-approved notice. In the event that Plaintiff is asked about the settlement, he will direct such inquiry to Class Counsel.

(C)   Nothing in this Agreement shall prohibit Class Counsel and Defendants' Counsel from disclosing information concerning this Agreement to their respective clients, employees and agents to the extent necessary to effectuate the terms of this Agreement. Moreover, nothing in this Agreement shall prohibit Defendants from disclosing information concerning this Agreement to its employees and agents to the extent necessary to effectuate the terms of this Agreement or who otherwise have a need to know the terms. The Parties may also disclose information concerning this Agreement to their respective counsel, taxing agencies and tax, audit and legal advisors.

(D)   Nothing in this Agreement shall prevent Defendants or Defendants' Counsel from making any necessary, appropriate or required disclosures to Defendants' regulators, auditors, bankers and the like, or from complying with its obligations under the law.

(E)   Class Counsel will promptly notify Defendants' Counsel of any third-party legal demand that they disclose information pertinent to the settlement or this Agreement.

**5.13   Return of Documents/Data.** Class Counsel will destroy all documents produced by Defendants and/or Defendants' Counsel (whether formally or for purposes of mediation) and shall delete all electronic records thereof within sixty (60) days of the Effective Date except as required by Class Counsel's malpractice insurance and the Rules of Professional Conduct.

5.14   **When Agreement Becomes Effective; Counterparts.**   This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.15   **Signature of Plaintiff.**   This Agreement is valid and binding if signed by Defendant's authorized representative and the Plaintiff. Plaintiff agrees to sign this Agreement and by signing this Agreement is bound by the terms herein stated, and further agrees not to request to be excluded as a Class Member and agrees not to object to or appeal any of the terms of this Agreement. Non-compliance by Plaintiff with this Section shall be void and of no force or effect. Plaintiff's failure to sign the Agreement does not nullify the Agreement. Any request for exclusion or objection by Plaintiff shall be void and of no force or effect.

5.16   **Facsimile and Email Signatures.**   Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.17   **Parties' Authority.**   The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Class Members to the terms and conditions thereof.

5.17   **Not All Class Member Signatures are Required. Because the eligible Class Members are so numerous, it is impossible or impractical to have each one execute this Agreement. The Notice will advise all Class Members of the** binding nature of the release and such shall have the same force and effect as if this Agreement were executed by each Class Member.

WE AGREE TO THESE TERMS,


Dated: October _15_, 2019     AUSTYN SPENCER ENTERPRISES, ~~LLC~~


Dated: October _15_, 2019     BLUE SKY PIZZA, LLC


Dated: October _15_, 2019     ~~RHETT~~ HIGHTOWER


Dated: October __, 2019     SHAWN ABEL

WE AGREE TO THESE TERMS,

Dated: August __, 2019          AUSTYN SPENCER ENTERPRISES,
                                LLC.


Dated: August __, 2019          BLUE SKY PIZZA, LLC


Dated: August __, 2019          RHETT HIGHTOWER


Dated: August __, 2019          SHAWN ABEL
       October 21, 2019